UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAHM INDUSTRIES INC. and
GROUND EFFECTS LTD.,

      Plaintiffs,

                                                      Case No. 02-74669
v.                                                 Hon. John Corbett O'Meara

BERNARD MOULD LTD. and
EDWARD BERNARD,

      Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' JOINT MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT IN PART

This is a patent infringement lawsuit between Canadian auto suppliers regarding a United States patent protecting the design for a side running board used for trucks and sport utility vehicles. Plaintiffs Brahm Industries Inc. ("Brahm") and Ground Effects Ltd. ("GFX") filed this suit, alleging that they are the true inventors of two patents that Defendants Bernard Mould Ltd. and Edward Bernard received in the United States. Defendants filed a counterclaim for patent infringement. On March 30, 2005, Plaintiffs filed a motion for summary judgment, claiming they have not infringed the patents because they have an implied license to use them, or alternatively because Defendants are equitably estopped from pursuing a patent infringement action. Defendants filed a response on May 26, 2005, and Plaintiffs filed a reply on June 30, 2005. The court heard oral argument on July 12, 2005. For the following reasons, Plaintiffs' motion for summary judgment is granted as to their implied license claim, but denied as to their equitable estoppel claim.

**BACKGROUND**

GFX is a "Tier I" auto supplier which produces running boards for trucks and SUVs. These running boards are typically a cylindrical pipe with a molded plastic step pad positioned in a cut-out opening on the top of the pipe. Brahm manufactures the molded step pads for GFX. Defendant Bernard Mould Ltd. makes precision molds used to manufacture the step pads. Edward Bernard is Bernard Mould Ltd.'s president. There is no debate regarding Bernard Mould Ltd.'s liability for the actions of Edward Bernard. For convenience, both defendants will hereinafter be collectively referred to as "Bernard."

In late 1997, GFX issued requests for quotes for a running board step pad. Brahm submitted a quote and was selected to produce the step pads. Brahm in turn requested quotes for moldings to manufacture the step pads, and Bernard was selected as the supplier. Over the next few months, the parties worked to create and produce the step pads. There is a dispute of fact regarding who actually invented these patents. Plaintiffs maintain that they are the true inventors for these patents and that Bernard had a minor role in the invention. Bernard argues he was the driving force behind the invention. For the purposes of this motion, Plaintiffs assume arguendo that Edward Bernard is the sole inventor.

Starting in 1998, Brahm issued a series of purchase orders to Bernard to manufacture the molds and to produce computer aided design prints embodying the running board design. Bernard sold a number of molds to Brahm to manufacture differently sized step plates, and was paid over $200,000 for the molds. In early 1999, Brahm began to use the molds to manufacture step plates, which were incorporated into GFX running boards. The running boards were sold to DaimlerChrysler, General Motors, Toyota, and others.

On April 30, 1999, Bernard filed an application for a patent for the running board design.

He filed a second application for another patent on January 12, 2001. Bernard was issued Patent No. 6,173,979 on January 16, 2001 and Patent No. 6,409,193 on June 25, 2002. Both covered "Vehicle Running Board Constructions." The patents were issued to Edward Bernard as sole inventor and assigned to Bernard Mould Ltd.

From the time period between 1999 and 2002, Brahm used Bernard's molds to produce running board step pads for GFX's running boards. Both plaintiffs maintain that they were never told that Bernard would seek royalty payments for his alleged inventions. Bernard admits that until 2002 he did not use the term "royalties" with the plaintiffs, but instead said that he hoped he would have their continued "future business," "future prospects," or "commissions." Bernard claims that he did not charge Brahm for design and development costs as an "investment" because he might receive royalties if a patent were to issue.

According to Bernard, Brahm attempted to obtain his release of any patent rights covering the step pad design in a letter Brahm drafted for Bernard's signature. The letter was dated December 30, 1999. It states that Bernard is seeking a patent on the step pad, that Brahm contracted and paid for the designs, and that the design was created from numerous sources. The letter further states that "Ed Bernard, Bernard Mould, all associated and/or related companies have no claim, royalty commission or rights in any step pad or step support parts manufactured by Brahm Industries, Inc. This letter further confirms that Brahms purchased all part design rights and intellectual property rights associated with the step pad and step supports programs." Bernard claims he refused to sign this letter and did not hear anything further about it from Brahm.

In a March 1, 2001 email to an employee of Algonquin Automotive, one of GFX's

competitors, Bernard noted that he had not yet attempted to collect royalties for his first patent, but had instead waited until it issued to seek royalties. Bernard also noted that no one else knew it was even registered. Bernard noted the design had been used in a number of vehicles already and offered to sell the patent to Algonquin. In a May 24, 2001 email to another Algonquin employee, Bernard noted, "My patent attorney told me that a patent so vital to the user (speaking in reference to Ground Effects) would fetch around 8% of the selling price as a royalty. If that's the case, Ground Effects would only have to have sales of $3.5 million in Step Plates to pay off the $280,000 patent in just one year."

On October 9, 2002, Bernard sent a letter to GFX and Brahm indicating that he had been given two patents for the running boards. The letter claimed that GFX and Brahm were producing products that infringed the patents, and they did not have a license agreement in place. Bernard requested 3% royalty payments for all running boards he had already sold to GFX after the patent issued on January 16, 2001, and 6% royalty payments for all future running boards after October 9, 2002. The letter also noted that if GFX and Brahm did not comply Bernard might take legal action or attempt to have any infringing parts seized if when attempted to cross the US-Canadian border.

Brahm asserts that the molds they bought from Bernard have no other purpose other than the manufacture of a step pad for the GFX running boards. Bernard claims the molds could also be used to manufacture swimming pool ladder steps, steps for the sides of boats, ladders, staircases, and other applications. The plaintiffs currently do not currently produce the products Bernard claims are possible to manufacture with the molds.

Bernard suggests the Brahm is no longer using the original molds Bernard sold them to

4

produce the step pads.  He claims that the molds would not have lasted six or seven years, but were more likely to wear out after three years.  Bernard further points to a 2002 purchase order from Brahm to a company called Brahm Molds, which appears to be for a new step pad mold.  Bernard also notes that Brahm asked him to provide a quote for a new mold in 2002, but was not awarded a contract for a mold.  He also alleges that he did not produce molds for two other molds Brahm admits to using.

## LAW AND ANALYSIS

Plaintiffs argue they are entitled to summary judgment for noninfringement on two grounds - an implied license and equitable estoppel.

### I.  Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Bender v. Southland Corp., 749 F.2d 1205, 1210-11 (6th Cir. 1984).

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.  As the United States Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted).  See Catrett, 477 U.S. at 322-23; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  A nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.  Lucas v. Leaseway Multi Transp. Serv., Inc., 738 F. Supp. 214, 217 (E.D. Mich. 1990), aff'd, 929 F.2d 701 (6th Cir. 1991).  Although the nonmoving party's evidence in opposition to summary judgment need not be of the sort admissible at trial, they must employ proof other than their pleadings and own affidavits to establish the existence of triable facts.  Ashbrook v. Block, 917 F.2d 918, 921 (6th Cir. 1990).

**II.  Implied License**

Acts infringe a patent if they are carried out "without authority."  35 U.S.C. § 271.  In this case, plaintiffs were not given an express license to produce the step pads protected by Bernard's patent.  However, a license agreement can arise by implication when a patent owner sells non-patented equipment used to produce a patented invention.  Met-Coil Systems Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 686 (Fed. Cir. 1983).  Two requirements must be met to imply a license - the "equipment must have no noninfringing uses" and "the circumstances of the sale must plainly indicate that the grant of a license should be inferred."  Id.

1.  Reasonable Noninfringing Uses

Bernard argues that the molds have a number of noninfringing uses, including the production of swimming pool ladders, recreational boating swim platforms, ladders to access the roofs of trailers, fire escape steps, library ladders, floating docks, sprial staircases in warehouse environments, and others.  The noninfringing uses need not be "commercially viable" such that they allow the user to sell the device at a profit, but they must be reasonable uses.  Glass

Equipment Development, Inc. v. Besten, Inc., 174 F.3d 1337, 1342-43 (Fed. Cir. 1999) (citing Bandag, Inc. v. Al Bolser's Tire Stores, Inc., 750 F.2d 903). Bandag held that a tire store which bought a tire retreading machine which was used to practice a patented retreading method did not have an implied license because the equipment had noninfringing uses, including reselling the equipment piecemeal, using the equipment as replacement parts, modifying the machine to retread tires in a non-infringing manner, and waiting 18 months for the patent to expire. All of those uses still dealt with the tire-retreading business however, and the plaintiff in Bandag did not demonstrate they were "unwise from a business standpoint." Bandag, 750 F.2d at 925.

Plaintiffs in this case have sufficiently established there are no reasonable uses for the molds other than to produce the patent-infringing step pads. The non-infringing uses proposed by Bernard all fall outside the automotive business. In addition, Bernard has not produced any evidence that these uses would be successful or marketable. These molds were clearly designed for a very specific purpose - to produce running board step pads for trucks and SUV's. Not every use that an attorney or inventor can imagine is a reasonable non-infringing use. Using the molds to make swimming pool ladders or the other suggestions are not reasonable non-infringing uses.

2.  Circumstances of the Sale

In this case, Bernard sold the molds to Brahm, with the understanding they would be used to create parts sold to GFX. When the molds were sold, Bernard did not mention that he expected any royalties from the use of the mold. When Bernard was awarded a patent, he did not even inform the plaintiffs that he had a patent until over a year and a half after it issued. This omission is not consistent with an expectation that Bernard was seeking royalty payments. Bernard claims that Brahm knew he was applying for a patent, and therefore should have known he would seek

royalties. However, there is a difference between Brahm's knowledge that Bernard was applying for a patent, and its knowledge that he would be seeking royalties if a patent issued. The evidence suggests that Brahm at least knew he was seeking a patent, but Bernard has produced no evidence that suggests Brahm thought he would seek royalties from them prior to the October 9, 2002 letter.

Bernard claims that his statements about seeking "future business" meant he was interested in royalties for the parts Brahm had already manufactured with Bernard's molds. This is not a reasonable interpretation of his statements. Royalties for products created in the past are different from contracts to create future molds. Brahm was reasonable in believing that Bernard was working cooperatively with Plaintiffs because he hoped to continue selling molds to Brahm in the future. Bernard's refusal to sign a document signing off on any royalty rights also did not affirmatively put Brahm on notice that he would be seeking royalties, especially royalties for step pads that were produced before Plaintiffs even knew Bernard held a patent.

The circumstances surrounding the sale of the molds to Brahm imply a license for their use. When GFX purchased the step pads from Brahm, Brahm's implied license was transferred as well. Bottom Line Management, Inc. v. Pan Man, Inc., 228 F.3d 1352, 1354 (Fed. Cir. 2000).

3.  Duration of the Implied License

The implied license covers all step pads produced by the molds Bernard sold to Brahm, even those produced after Bernard notified Plaintiffs that he was seeking royalties. Cf. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 346 (1961) (holding that a person who buys a patented article with an implied license can continue to use it and repair it even after the license holder is put on notice that the patent holder wants royalties). In this case, the molds

themselves were not patented, but they were used to produce a patented article. The principle announced in Aro applies to this implied license as well. Plaintiffs have a license to use the molds Bernard sold them to make step pads (and to reasonably repair those molds), but the implied license does not cover any step pads produced by molds not sold to Brahm by Bernard.

Defendants have pointed to evidence that the plaintiffs might not be using the same molds Bernard sold them. As such, genuine issues of material fact remain regarding any potential infringements that occurred outside of the implied license.

## II. Equitable Estoppel

Plaintiffs alternatively argue that Bernard's actions should equitably estop him from asserting patent infringement. The Federal Circuit has explained the difference between implied license analysis and equitable estoppel analysis as follows:

> The primary difference between the estoppel analysis in implied license cases and the analysis in equitable estoppel cases is that implied license looks for an affirmative grant of consent or permission to make, use, or sell: i.e., a license. See Stickle v. Heublein, 716 F.2d 1550, 1559 (Fed. Cir. 1983). Equitable estoppel, on the other hand, focuses on "misleading" conduct suggesting that the patentee will not enforce patent rights. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1041-44 (Fed.Cir.1992).

Wang Laboratories, Inc. v. Mitsubishi Electronics America, Inc., 103 F.3d 1571, 1581 (Fed. Cir. 1997). A typical equitable estoppel situation has three characteristics: "1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, 2) the alleged infringer relies on that conduct, and 3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1371 (Fed. Cir. 2001). Equitable estoppel is heavily dependent on the underlying factual

determinations. Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1292 (Fed. Cir. 1992).

1.  Misleading Conduct

Plaintiffs must show that Bernard communicated to them in a misleading way that he would not later claim that Plaintiffs infringed his patent. In some circumstances, such as when there is a clear duty to speak, intentional silence can be interpreted as misleading conduct. A.C. Aukerman Co. v. R.I. Chaides Constr. Co., 960 F.2d 1020, 1042 (Fed. Cir. 1992). Plaintiffs claim that Bernard's silence about obtaining his patent was misleading conduct. However, Bernard was not remaining silent in the face a clear duty to speak in this case. Plaintiffs never specifically asked him if he was seeking royalties, and his silence did not affirmatively abandon any claim to royalties. Indeed, when the facts are taken in the light most favorable to Bernard, Plaintiffs knew that he was seeking a patent and even tried to get him to sign off on his patent and royalty rights by drafting a letter for his signature. His refusal to sign the letter is not misleading silence that gives Plaintiffs the right to infringe his patent. If Bernard's conception of the facts is true, Plaintiffs understood that they might be liable to pay royalties if Bernard got a patent. There are genuine questions of material fact regarding the extent of Bernard's alleged misleading conduct. As such, summary judgment is not warranted on equitable estoppel grounds.

Plaintiffs further argue that Bernard's deceptive behavior was evidenced by his attempts to sell the patent rights to one of Ground Effects' competitors. Plaintiffs claim Bernard intended to trap them by selling them the molds, keeping quiet about his patent, and then demanding royalties once they became dependent on his patent. If this story were accurate, it might be evidence that Bernard deliberately misled them about his intention to seek royalties. Regardless, there are genuine disputes of material fact regarding whether this picture is even accurate. Summary

judgment is not warranted.

Because a genuine issue of material fact exists regarding Defendant's alleged misleading conduct, the court need not reach the remaining two prongs of equitable estoppel analysis. That said, genuine issues of material fact likely exist regarding the reliance prong as well. Plaintiffs claim Bernard lulled them into a false sense of security such that they didn't take legal action to protect themselves from a potential patent infringement lawsuit. The court is not convinced that plaintiffs have established that they reasonably relied the fact that Bernard would not eventually ask for a royalty.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' March 30, 2005 Motion for Summary Judgment of Noninfringement is **GRANTED IN PART**. Plaintiffs have established that they are entitled to an implied license to produce the step pads with the molds Defendants sold them. Plaintiffs have not established that Defendants should be equitably estopped from pursuing a patent infringement action with regard to any other non-licensed use of the patent.

        s/John Corbett O'Meara
        John Corbett O'Meara
        United States District Judge

Dated: July 22, 2005